DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH J. KORFF, | ) | |
| | ) | CASE NO. 4:10-CV-02662 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HILTON RESORTS CORPORATION | ) | |
| D/B/A HILTON GRAND VACATIONS, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Hilton Resorts Corporation D/B/A Hilton Grand

Vacations' motion to dismiss Plaintiff Joseph J. Korff's complaint for failure to state a claim

upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6).  ECF

No. 5.  For the reasons that follow, Defendant Hilton Resorts Corporation D/B/A Hilton Grand

Vacations' motion is Granted.

## I.  The Facts Alleged in Plaintiff Korff's Complaint

This dispute arose out of the sale of one of Defendant's timeshare plan to Plaintiff Joseph

J. Korff ("Korff").  Korff alleges the plan does not work as was represented to him by the

salesperson.

Korff sat through a timeshare presentation while on a trip to New York City in January

2010.  Korff is a business owner who allegedly did not want a timeshare for his own personal

use, but rather to allow his employee salespeople to stay cheaply in higher-end hotels.

The Plaintiff alleges that Hilton sales representative Stephanie Abrams ("Abrams")

answered Korff's questions regarding the timeshare.  Abrams allegedly told Korff the timeshare's

(4:10-CV-02662)

point system would allow him to book hotels at around $100 per night and each point would be worth about one dollar.  Abrams also allegedly told Korff she would be his sole point of contact for booking hotel rooms and that Korff's assistant would also be able to arrange hotel stays.  Korff further alleges Abrams claimed ownership in the same program she was selling and the program worked for her in the same manner she described to Korff.  Korff signed up for the 57th Street Vacation Suites Program because he intended to use the program as a vehicle for earning points.  The purchase price under the contract was $99,900.00 with a down payment of $13,133.00 plus a closing cost of $3,143.00.

After completing the purchase of the timeshare, Korff allegedly instructed his assistant Judy Walton ("Walton") to book a stay using his club points.  Allegedly, Abrams told Walton a three day stay would cost several thousand points.  This information conflicted with Abrams's alleged statements that the points would be worth a dollar each and a stay would cost about a hundred dollars a night.  After a second attempt to book a room on a different occasion, a Hilton employee allegedly told Walton that a three day stay would cost 3,000 points and that it would be better to simply pay for the hotel room.  Walton continued to contact Hilton in an effort to understand the program, but was never given answers that satisfied Korff.  Eventually a Hilton employee allegedly told Walton that she could not book hotel stays on Korff's behalf.  Allegedly, the same employee later suggested that Walton book the stays as "Mrs. Korff" to which Walton refused.  After some attempts at negotiation, Hilton offered to sell Korff additional vacation packages.  Korff contends that he was misled into the program that he describes as "lacking in any redeemable aspects."  ECF No. 1 at ¶ 37.

(4:10-CV-02662)

Korff filed his complaint on November 23, 2010, asserting four counts of fraud in the inducement.  Specifically, Korff alleges that Abrams made four misrepresentations that induced him to enter into the contract: (1) that Abrams was an owner in the program; (2) that Korff would save a significant amount of money on hotel rooms when compared to market rates; (3) that Abrams would be the single point of contact for Korff in the program; and (4) that Korff's assistant would be able to immediately book hotel stays for Korff and his employees.

Hilton flied its motion to dismiss pursuant to Rule 12(b)(6) on February 3, 2011, to which Korff opposed and Hilton replied in support.  ECF Nos. 5, 6 & 9, respectively.  Thus, the matter is fully briefed and the Court rules as follows.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) contains a minimum requirement of a "short and plain statement" showing entitlement to relief.  Rule 12(b)(6) allows a party to dismiss a complaint against that party if the complaint fails "to state a claim upon which relief can be granted."  In reviewing a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right of relief above the speculative level . . . on the assumption that all the allegations are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff's factual allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiffs.

A claim survives a motion to dismiss under Rule 12(b)(6)  if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  According to *Twombly*, to survive a

(4:10-CV-02662)

Rule 12 motion to dismiss for failure to state a claim, the "'grounds' of [plaintiff's]

'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal,* 129 S.Ct. at 1950;

Fed.R.Civ.P. 12(b)(6).  However, "[w]hen there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Iqbal*, 129 U.S. at 1950.

### III.  Centrality of the Contract Documents

While the Court is generally limited to the allegations of the complaint and attached

exhibits in deciding a Rule 12(b)(6) motion, where the plaintiff has referenced documents in the

complaint which are central to his claims, the documents are treated as part of the pleadings and

may be considered even if the documents are not physically attached to the complaint.

*Teagardener v. Republic-Franklin, Inc. Pension Plan*, 909 F.2d 947, 949 (6th Cir. 1990).  The

*Teagardener* court relied in part on the nonmovant's extensive quoting from the document.  *Id.*

In the instant case, Korff has made reference to the contract in his complaint (ECF No. 1 at ¶ 22),

and repeatedly makes reference to the program embodied in the contract. ECF No. 1 at ¶ 14-21.

Korff maintains that the contract is not central to his claims because he has not quoted

extensively from it and that his claim sounds in tort.  If Korff is correct, then the Court cannot

look to the terms of the contract in deciding this motion.  Hilton counters that without the

contract, there is no claim.  Further, Korff seeks relief from the terms of the contract itself.

Hilton is correct.  It would make little sense to decide this motion without looking to the contract

that not only gave rise to the claim, but also forms the basis for the relief Korff seeks.  The

(4:10-CV-02662)

contract is central to Korff's claims because it is a necessary part of the complaint Korff brought before the court. Accordingly, and pursuant to *Teagardener,* the Court will consider the contract in deciding Hilton's motion to dismiss.

## IV.  Applicable Law

There is a dispute as to whether New York or Ohio law applies. The contract contains a choice of law clause making New York law applicable in the event of a dispute. It provides that the contract "shall be governed under and interpreted and enforced in accordance with the laws of the State of New York." ECF No. 5-1 at 7. Hilton has briefed New York and Ohio law, while Korff has only briefed Ohio law.

In a diversity case, the federal court applies the law of the forum state, including choice of law provisions. *Davis v. Sears, Roebuck & Co.*, 873 F.2d 888, 892 (6th Cir. 1989). Therefore, the Court applies Ohio choice of law rules. The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd*., 814 F.2d 1120, 1122 (6th Cir. 1987)

(4:10-CV-02662)

(quoting *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co*., 453 N.E.2d 683 (1983)).  Upon review, the Court finds that New York has a substantial relationship to the transaction pursuant to section (a) of the above-quoted Restatement because the 57th Street property is located in New York.  Further, the Court's attention has not been drawn to a fundamental policy of the state of Ohio that would preclude application of the choice of law clause pursuant to section (b).

In *Moses v. Business Card Exp., Inc.*, the Sixth Circuit found the language that the contract and "the [interpretation] thereof shall be governed by the laws of the State of Michigan" was sufficient to cover claims of fraud and misrepresentation.  929 F.2d 1131, 1139 (6th Cir. 1991).  The Sixth Circuit reasoned that the language included more than just interpretation, stating "[plaintiffs] put the validity of the contract in issue, and such a claim would appear to be encompassed by the language . . . ."  *Id.* at 1140.  A Sixth Circuit panel in *Banek Inc. v. Yogurt Ventures U.S.A., Inc.* reached a similar conclusion with the language "all rights and obligations of the parties hereto shall be governed in accordance with the laws of the State of Georgia."  6 F.3d 357, 363 (6th Cir. 1993).  The panel stated that "[h]ad these claims been only tangentially related to the franchise relationship, we would be much more inclined to find the choice of law provision not applicable."  *Id.*  In *Baumgardner v. Bimbo Food Bakeries Distribution, Inc.*, the district court held the language "validity, interpretation and performance" was enough to subject tort claims surrounding a contract dispute to the forum selection clause of the contract.  697 F.Supp.2d 801, 805-06 (N.D. Ohio 2010).

The Court finds the language "governed under and interpreted and enforced" within the context before it is sufficiently broad to encompass Korff's fraud in the inducement claims.  As

-6-

(4:10-CV-02662)

the Sixth Circuit reasoned in *Moses*, the tort claims in the instant case put the validity of the entire contract at issue.  As in *Banek,* Korff's claims are not tangential to the contract.  Instead, Korff is arguing he was mislead into signing it, making the contract a central part of his claims. The language of the choice of law clause is broad enough to sweep in any attempt to attack the validity of the contract.  *See Baumgardner*, 697 F.Supp.2d at 805-06.

Having determined that the choice of law clause applies to Korff's claims, the Court will proceed to determine if the clause was rendered a nullity by Korff's allegations of fraud in the inducement.  Ohio law upholds choice of law clauses in a contract unless a party shows evidence of fraud or overreaching.  *Kennecorp Mortgage Brokers v. Country Club Convalescent Hosp*, 610 N.E.2d 987, 989 (Ohio 1993).  In determining whether fraud should invalidate a forum selection clause, the Sixth Circuit teaches that "unless the alleged fraud or misrepresentation induced the party opposing the forum selection clause to *agree to inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause."  *Moses*, 929 F.2d at 1138 (emphasis in original).  Because Korff's allegations of fraud in the inducement are not allegations that the inclusion of the choice of law clause in the contract was due to fraud but are general allegations of fraud relating to the entire contract, the choice of law clause is applicable and New York law applies to all of his claims.

### V. <u>Hilton's Defenses to Fraud</u>

Hilton raises two defenses to Korff's fraud in the inducement claims: first, Korff alleges non-actionable promises to perform future acts, and second, Korff's claims are barred by the

(4:10-CV-02662)

parol evidence rule.

**A.**

Hilton argues that Abrams's alleged misrepresentations are not actionable fraud claims because they were all promises to perform acts in the future.  In general, a cause of action for fraud cannot be predicated on a promise to perform some future act.  *Sabo v. Delman*, 143 N.E.2d 906, 908 (N.Y. 1957).  However, "a contractual promise made with the undisclosed intention not to perform it constitutes fraud and, despite the so-called merger clause, the plaintiff is free to prove he was induced by false and fraudulent misrepresentations . . . ."  *Id.* at 909.[1][2]

However clear the rule in *Sabo* may have been, the New York intermediate appellate courts have not applied the first half (promise made with intent not to perform is fraud) consistently and some have applied the exact opposite rule.  *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp. 2d 231, 244 n. 6 (S.D.N.Y. 2006) (detailing this split in New York contract law).  According to *Hurowitz*, the Second Circuit has not addressed the apparent inconsistency, but several district courts have—reaching opposing results.  *Id.*  One district court would apply the *Sabo* rule only to promises that are peripheral to the provisions of the contract before the court, while another would find that the rule announced in the intermediate appellate

---

[1]  This species of fraud is also called promissory fraud in some Ohio cases.  The Sixth Circuit consistently uses this term, while Ohio courts only use it sporadically.  New York cases do not use the term promissory fraud.  Because the parties do not use the term promissory fraud, this Court will use the phrasing "fraudulent promises of future performance."

[2]  New York courts use the term "merger clause."  Ohio courts use the term "integration clause."  In either event, the terms mean the same thing: the presence of such a clause indicates that the parties intended for the entire agreement to be "incorporated" or "merged" into the written document.

-8-

(4:10-CV-02662)

courts has become the law by virtue of the highest appellate court's long silence.  *Id.*  In

diverging from the *Sabo* rule, the state intermediate appellate courts apparently fear plaintiffs

dressing ordinary breach claims as fraud merely by alleging intent not to perform.  *Frontier-*

*Kemper Constructors Inc.v. Am. Rock Salt Co.*, 224 F. Supp. 2d 520, 527 (W.D.N.Y. 2002).

Despite this apparent divergence, the Court finds that upon review, *Sabo* is still the

applicable law in New York and a contractual promise made with present intent not to perform is

actionable fraud under the law of that state.  In 1986, the highest appellate court of New York

again applied *Sabo* for this rule.  *Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 502

N.E.2d 1003, 1004 (N.Y. 1986) (stating "a promise . . . made with a preconceived and

undisclosed intention of not performing it . . . constitutes a misrepresentation.") (quoting *Sabo*,

143 N.E.2d at 909).  Numerous intermediate appellate courts in New York have held to *Sabo*, as

well.  *See e.g., Tanzman v. La Pietra*, 778 N.Y.S.2d 199, 201 (App. Div. 2004) (citing and

applying the *Sabo* future performance test); *Wagner Trading Co. v. Tony Walker Retail Mgmt.*

*Co.*, 715 N.Y.S.2d 673 (App. Div. 2000) (citing *Deerfield Communications Corp.*, 502 N.E.2d at

1004); *JC Mfg., Inc. v. NPI Electric, Inc.*, 577 N.Y.S.2d 145, 146 (App. Div. 1991) (citing and

applying the *Sabo* future performance test).  The New York Court of Appeals has not overruled

*Sabo* and there appears to be no good authority for diverging from it.

Hilton argues Abrams's statements were promises of the performance of future acts—in

essence, that the program would function as she claimed.  However, only one count is accurately

categorized as a promise of the performance of some future act despite Korff's use of the word

"would" in his complaint.  Counts one, two and four are all present statements about Abrams's

-9-

(4:10-CV-02662)

ownership in the program (Count one), the financial functioning of the program (Count two) and

the logistical functioning of the program (Count four).  For these counts, Korff need not allege a

present intent not to perform.  Counts one, two and four all survive dismissal on these grounds.

Count three alleges Abrams represented she would be Korff's single point of contact

within the program.  This is a promise of future performance because Abrams could only act as

Korff's contact in the future.  However, Korff has successfully brought this statement within the

*Sabo* exception to the general rule which states, "a contractual promise made with the

undisclosed intention not to perform it constitutes fraud and, despite the so-called merger clause,

the plaintiff is free to prove he was induced by false and fraudulent misrepresentations . . . ."

*Sabo*, 143 N.E.2d at 909.  At this stage, Korff need only plausibly allege that Abrams made the

statement having a present intent not to perform.  Korff has done so by alleging the statement

was presently false.  *See* ECF No. 1 at 9.  Dismissal is not appropriate on these grounds.

**B.**

The main dispute in this 12(b)(6) motion is whether the parol evidence rule excludes

Korff's evidence of fraud in the inducement, and thus prevents the complaint from stating

plausible grounds for relief.  In New York, the parol evidence rule provides that "when parties set

down their agreement in a clear, complete document, their writing should . . . be enforced

according to its terms.  Evidence outside the four corners of the document as to what was really

intended but unstated or misstated is generally inadmissible to add to or vary the writing."

*W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).  Accordingly, "[t]he parol

evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written

-10-

(4:10-CV-02662)

instrument . . . ." *Sabo*, 143 N.E.2d at 908 (internal citations omitted).

The New York Court of Appeals and the Second Circuit have consistently followed *Sabo* for its second proposition: New York law allows the use of extrinsic evidence in a fraud in the inducement claim even where the written contract contains a general merger clause.[3] *See Deerfield Comms. Corp.*, 502 N.E.2d at 1004; *Hobart v. Schuler*, 434 N.E.2d 715, 716 (N.Y. 1982); *Millerton Agway Cooperative, Inc. v. Briarcliff Farms, Inc.*, 215 N.E.2d 341, 343 (N.Y. 1966); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("New York . . . permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration . . . clause.").[4]  Extrinsic evidence may be admissible to *rescind* the *written* agreement, but is not admissible to *enforce* the *oral* agreement.  *Sabo*, 143 N.E.2d at 908.

---

[3]  Ohio law is markedly different on the admission of extrinsic evidence to prove fraud in the inducement.  Parol evidence may be used to prove fraud in the inducement in Ohio.  *Drew v. Christopher Const. Co.*, 41 N.E.2d 1018, 1020 (Ohio 1942).  However, the Ohio Supreme Court said,

> [T]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is [sic] exactly what the Parol Evidence Rule was designed to prohibit.

*Galmish v. Cicchini*, 734 N.E.2d 782, 790 (Ohio 2000) (internal citations and quotation marks omitted).  "[T]he parol evidence rule does apply to . . . promissory fraud if the evidence in question is offered to show a promise which contradicts an integrated written agreement.  Unless the false promise is either *independent of or consistent with* the written instrument, evidence thereof is inadmissible."  *Id.* at 791 (internal citations and quotation marks omitted) (emphasis added); *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 457 (6th Cir. 2005) (quoting the same language and applying the "independent of or consistent with" test).

[4]  Accordingly, despite its age, *Sabo* remains good, current law.

-11-

Under New York law, fraud in the inducement and fraud have essentially the same elements: (1) representation, (2) falsity, (3) scienter, (4) deception, and (5) injury.  *Id.* at 907.  If the parol evidence rule excludes Korff's evidence of Abrams's alleged promises, the complaint will not plausibly allege the elements of fraud in the inducement.

Korff's contract with Hilton contains an integration or merger clause, and states, *inter alia*, that nothing the salesperson said would be part of the final agreement between the parties.  ECF No. 5 Ex. 1 at 7.  New York law allows extrinsic evidence where there is a general merger clause.  *Sabo*, 143 N.E.2d at 909.  However, a specific merger clause directly disclaiming reliance on the very subject a plaintiff seeks to claim as fraud will preclude the introduction of extrinsic evidence.  *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959) (noting that a specific merger clause of a contract "destroy[ed] the allegations" that the "agreement was executed in reliance upon . . . contrary oral representations") (citation omitted).[5]

A general merger clause disclaims all reliance on oral statements; a specific merger clause disclaims reliance on specific subjects.  *Id.* at 598-99.  The merger clause dealt with in *Danann* disclaimed any reliance on oral statements about the operating expenses of a building leased to the plaintiff.  *Id.* at 598.  The plaintiff in *Danann* later sued on oral representations relating to operating expenses.  *Id.*  The New York Court of Appeals held the merger clause was specific and therefore the parol evidence rule excluded the plaintiff's evidence of oral

---

[5] Like *Sabo*, *Danann* has been recently applied, and remains good law.  *See Psenicska v. Twentieth Century Fox Film Corp.*, No. 08-4604, 2009 U.S. App. LEXIS 25170 (2d Cir. 2009) (unpublished opinion) (citing *Danann*, 157 N.E.2d 597); *Warner Theatre Assocs. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) (citing *Danann* and applying the general/specific merger distinction); *see also 85-87 Pitt St., LLC v. 85-87 Pitt St. Realty Corp.*, 921 N.Y.S.2d 40 (App. Div. 2011) (slip opinion).

representations about operating expenses.  *Id.*

Accordingly, if the merger clause contained in the contract documents is a specific

merger clause, the Court would deem extrinsic evidence, such as Abrams's statements,

inadmissible.  The merger clause in the instant case reads:

> IT DOES NOT MATTER WHAT YOU ARE TOLD OR SHOWN, OR
> WHAT YOU MAY TELL OR SHOW THE SALESPEOPLE. ONLY WHAT
> IS WRITTEN IN THESE DOCUMENTS IS A PART OF THE CONTRACT
> DOCUMENTS. YOU REALIZE: (1) OFTEN PEOPLE DO NOT FULLY
> UNDERSTAND EACH OTHER, ESPECIALLY WHEN THEY SPEAK AND
> DO NOT WRITE DOWN WHAT IS SAID AND (2) THE SELLER IS NOT
> PRESENT TO HEAR AND CONTROL WHAT SALESPEOPLE MAY TELL
> OR SHOW YOU. SINCE THE SELLER DOESN'T KNOW AND CANNOT
> CONTROL EVERYTHING THAT IS SAID, AND TO AVOID
> MISUNDERSTANDINGS, ALL OF THE AGREEMENTS BETWEEN YOU
> AND THE SELLER ARE TO BE IN WRITING IN THE CONTRACT
> DOCUMENTS. YOU AND THE SELLER AGREE THAT NO ONE HAS
> PROMISED ANYTHING, EXCEPT WHAT IS WRITTEN IN THEM.

ECF No. 5-1 at 7.  The contract also contains a second, similar clause, providing: "You should

not rely upon any oral representations as the basis for your purchase but rather only upon the

purchase agreement and attendant documents provided at purchase."  ECF No. 5-2 at 2.

Upon review, the Court finds the first and larger clause is a specific merger clause.  Korff

asserts that he relied on four statements allegedly made by Abrams.[6]  Rather than generally

disclaiming reliance on all oral representations, Hilton specifically disclaimed reliance on oral

representations *by the salesperson.*  Pursuant to *Danann*, this specific merger clause precludes

---

[6]  They are: (1) that Abrams was an owner in the program; (2) that Korff would save a
significant amount of money on hotel rooms when compared to market rates; (3) that Abrams
would be the single point of contact for Korff in the program; and (4) that Korff's assistant would
be able to immediately book hotel stays for Korff and his employees.

-13-

Korff's reliance on the statements made by Abrams and extrinsic evidence of the statements allegedly made is inadmissible.

Further, as in *Danann*, "plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded." *Danann*, 157 N.E.2d at 599.  In *Marine Midland Bank, NA v. Walsh* , the intermediate appellate court found that, although the contract made "no reference" to the specific subject of the dispute, the language used was sufficiently strong to overcome any claim of reliance on oral statements.  689 N.Y.S.2d 288, 89 (App. Div. 1999).  The Court finds the rationale of *Marine Midland* persuasive.  *Id.* at 288.  In the instant case, Korff has, in the plainest language, disclaimed all reliance on Abrams's representations.

Accordingly and pursuant to New York law, Korff's extrinsic evidence is inadmissible on counts one through four.  Korff's complaint does not contain a plausible claim to relief and dismissal is appropriate on the grounds of the parol evidence rule.

## VI.  Conclusion

Based on the foregoing analysis, Defendant Hilton's motion to dismiss (ECF No. 5) pursuant to Rule 12(b)(6) is GRANTED.

IT IS SO ORDERED.

__June 24, 2011_____                              __*s/ David D. Dowd, Jr.*_____
Date                                                                David D. Dowd, Jr.
                                                                       U.S. District Judge

-14-